1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                          **DISTRICT OF NEVADA**
6
7    PASEO VERDE GIBSON APTS. LLC, a Nevada          Case No. 2:16-cv-03000-KJD-PAL
     Limited Liability Company,
8                        Plaintiff,                   **ORDER**
          v.
9
     VALLEY ELECTRIC ASSOCIATION, INC., *et*
10   *al.*,
11                       Defendants.
12
13          Presently before the Court is Plaintiff's Motion for Summary Judgment (#17).

14   Defendants filed a response in opposition (#20) to which Plaintiff replied (#21). Also before the

15   Court is Defendants' Motion for Summary Judgment (#18). Plaintiff filed a response in

16   opposition (#20) to which Defendants replied (#22).  The parties agree that the Court will

17   determine on cross-motions for summary judgment whether Defendant Valley Electric

18   Association, Inc. ("VEA"), a wholly owned subsidiary of Valley Electric Transmission

19   Association, LLC, is entitled to and did renew its fifty (50) year right-of-way ("ROW") across

20   Plaintiff's property for an additional fifty-year term. The facts are not in issue and only a

21   question of law regarding renewal of the ROW remains pending.

22   I. Facts

23          Valley Electric Association, Inc. is a non-profit electric utility incorporated in 1965 and

24   based in Pahrump, Nevada. VEA originated as a consolidation of the Amargosa Valley

25   Cooperative ("Amargosa"), the Amargosa Power Company, the Beatty Utility Company, and the

26

White Mountain Electric Cooperative. Among the assets transferred to VEA from these constituent entities was a 138 kilovolt ("kv") electric transmission line that was built in 1963 by Amargosa with funds that were made available from the Rural Electrification Association. The line was built to import power needed by the local farmers and the community in the Amargosa Valley to satisfy growing demand and to increase reliability of service. In 2010, Valley Electric Transmission Association, LLC was formed to hold VEA's transmission assets.

The construction of the transmission line at issue in this case was funded by a loan under the Rural Electrification Act of 1936 ("REA"), 7 U.S.C. § 31, *et. seq.*, which was intended to provide electrical service to rural America and agricultural communities. The statute provided low cost loans to farmers to enable them to form and operate cooperatives to build electrical infrastructure to modernize operations and to obtain low cost power at wholesale and transmit it to rural and agricultural load centers.

The transmission line originates at Western Area Power Administration's ("WAPA's") Amargosa Substation in Henderson, Nevada, and extends 142-miles to Beatty, Nevada. It interconnects with Nevada Power Company's transmission system at the Department of Energy's Jackass Flats Substation.

WAPA is a federal agency and part of the U.S. Department of Energy that sells electricity at wholesale to various utilities in fifteen western states from more than fifty hydroelectric power plants operated by the U.S. Bureau of Reclamation, U.S. Army Corps of Engineers, and the International Boundary and Water Commission. VEA is entitled to approximately thirty (30) megawatts of low-cost hydroelectric power from WAPA in the summer and, twenty-seven (27) megawatts of power in the winter, which is transmitted across the subject transmission lines for the benefit of VEA's members and customers.

Segments of the transmission line traverse federal land under the jurisdiction and control

of the Bureau of Land Management ("BLM"). In 1965, the BLM issued a right-of-way to Amargosa pursuant to a federal statute, 43 U.S.C. § 961, which permits the Department of Interior the right to grant right-of-way across federal land to facilitate the construction of electric transmission, distribution and communication facilities throughout the United States, and in particular the American West, where large sections of property were, and still are, owned by the United States.

Significantly, in keeping with the public policies favoring the development of electricity and communications to rural and agricultural communities in the West, the BLM regulations enacted to implement 43 U.S.C. § 961 expressly exempted transmission projects funded and financed through REA from any obligation to pay rent for any rights-of-way granted under and pursuant to federal acts. See 43 C.F.R. § 2234.1-6.

The BLM granted Amargosa rights-of-way across federal lands for its 138 kv transmission line for a period of fifty years, including the ROW at issue. The ROW grant specifically incorporated into its provisions terms and conditions set forth in two regulations, 43 C.F.R. § 2234.1 and 43 C.F.R. § 2234.4-1, both published in Circular Number 2161.

43 C.F.R. § 2234.4-1(l)(8) provides that "unless sooner canceled, the right of way shall expire 50 years from the date thereof. If, however, within the period of 1 year prior to the expiration date, the grantee shall file, in accordance with section 2234.1-2(a), a written application to renew the right of way, and shall agree to comply with all the laws and regulations existing at such expiration date governing the occupancy and use of lands of the United States for the purpose desired, the right of way may be renewed."

43 C.F.R. § 2234.1-2(a) establishes that an applicant may have its right-of-way renewed provided that it meets five specific requirements. Specifically, the regulation provides that a renewal application: (1) shall require no special form other than it must be typewritten or in

legible handwriting; (2) must identify the authorizing regulation; (3) state that the right-of-way will continue to be subject to existing law; and (4) cite the original Act under which the right-of-way was authorized; and (5) state the primary purpose for which the right-of-way is used. No fee is required under the section to file the request for renewal if the right of way is an REA project. 43 C.F.R. § 2234.1-2(a)(2).

In November 1971, the BLM transferred a small portion of the land over which VEA's ROW is situated to the City of Henderson, under Land Patent 27-72-0017 ("the Land Patent"). The Land Patent expressly provided that the ROW was "[s]ubject to those rights for transmission line purposes which have been granted to [VEA], its successors and assigns under the Act of March 4, 1911, 43 U.S.C. § 961 . . . which are due to expire on July 5, 2015." The Land Patent was recorded in the offices of the Clark County Recorder on December 19, 1971.

Plaintiff acquired the property that is the subject of this litigation from successors in interest to H.M. Greenspun in 2014, who had acquired the property from the City of Henderson in 1972. The land acquired by Plaintiff over which the ROW is situated comprises approximately 1.19 acres of 1,377 acres of land over which the entire right-of-way is situated. Plaintiff admits that the land conveyed to it was, by deed and otherwise, subject to the ROW as set forth in the Land Patent.

On February 2, 2015, "within one year prior to expiration of the right of way grant", July 5, 2015, VEA provided all owners of property under the 142-mile right-of-way with notice of intent to renew and renewal of the right-of-way ("the Notice"). The Notice provided to Plaintiff indicated that the ROW would be continued for its original use, that VEA would continue to honor and be bound by all the terms and conditions of the original grant, that VEA would be continue to abide by all laws and regulations applicable to the original grant for the entire renewal term of the grant, and that the renewal was made under the Act of March 4, 1911, 43

U.S.C. § 961. VEA recorded the Notice with the Clark County Recorder.

Plaintiff offered no substantive responses supporting objections to renewal, only asserting that VEA did not have a right of renewal. Out of more than 200 identical notices sent to all private and public landowners over which the right-of-way is situated, Plaintiff is the only owner to object to or contest VEA's right to renew. The original right-of-way for the 138 kv line continues to be used for its original purposes and is critical to the ability of VEA to provide adequate and reliable service to all of its customers and members.

II. Analysis

In 1965, the BLM granted Amargosa right-of-way pursuant to the Act of March 4, 1911, 43 U.S.C. § 961, over what is now Plaintiff's property in Henderson, Nevada. The ROW specifically referenced Circular 2161 and 43 C.F.R. §§ 2234.1 and 2234.4-1. The grant provided for no rental to be paid. Further, the grant was specifically conditioned on and subject to the following relevant terms: (1) all valid rights existing on the day of the grant; and (2) all applicable regulations found in Circular 2161.

In November 1971, the BLM transferred the subject property to the City of Henderson via the Land Patent. The land was transferred subject to: "Those rights for transmission line purposes which have been granted to Valley Electric Association, its successors or assigns under the Act of March 4, 1911 . . . which are due to expire on July 5, 2015[.]" Plaintiff, successor-in-interest to the City of Henderson, now claims that the ROW expired on July 5, 2015 and that Defendants are in trespass.

The right-of-way granted to VEA on July 6, 1965 is an easement: "a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." See Marvin M. Brandt Rev. Trust v. U.S., 134 S.Ct. 1257, 1265 (2014)(quoting Restatement (Third) of Property: Servitudes § 1.2(1)(1998)). "[P]urchasers

5

or grantees of the United States took the fee of the lands patented to them subject to the easement created[.]" <u>See</u> <u>Id.</u> (quoting 16 Op. Atty. Gen. 250, 254 (1879)). Ordinary principles of contract interpretation should be employed to give meaning to servitudes, including easements. <u>See</u> Restatement (Third) of Property: Servitudes § 4.1,Comment B (1998) ("As provided in Section 202 of the Restatement (Second) of Contracts, if the principal purpose of the parties is ascertainable, it is given great weight in interpreting the contract"). These principles are deadly to Plaintiff's argument that the ROW is not open to unilateral renewal and must be renegotiated on terms that are clearly contrary to the statutes and regulations that brought it into being in the first instance.

Plaintiff incorrectly argues that the four corners of the ROW document are silent as to renewal of the ROW and that any attempt at reference to the Act of March 4, 1911 and Circular 2161 are an attempt to introduce parol evidence to vary or contradict the terms of the written agreement. The plain language of the Land Patent grants the Property subject to "Those rights for transmission line purposes which have been granted to Valley Electric Association . . . under the Act of March 4, 1911[.]" Thus, the Land Grant itself references and incorporates the Act of March 4 1911. Further, the rights for transmission line purposes were conveyed by the ROW. The ROW expressly incorporates the Act of March 4, 1911, Circular 2161, and 43 C.F.R. §§ 2234.1 and 2234.4-1.

The ROW existed before the Land Patent. Purchasers or grantees of the United States take their Property subject to the ROW, or easement. The Land Grant cannot change the interest held by VEA without the express, written consent of VEA. Though the Land Grant did not specifically mention the right of renewal, it incorporated the regulations that enabled it. The express purpose of the Act of March 4, 1911 was to lower the cost of providing electricity to rural communities. It did so by giving jurisdiction to the BLM to negotiate cost free easements

for poles and lines for the transmission of electrical power. <u>See</u> 43 C.F.R. § 2234.4-1. It further allowed renewal of the right-of-way for another period, not to exceed fifty years, upon specifying it will be "subject to the terms and conditions of the applicable regulations[.]" <u>Id.</u> at § 2234.4-1(a); <u>see also</u> 43 C.F.R. § 2234.4-1(c)(8) ("the grantee shall file, in accordance with § 2234.1-2(a), a written application to renew the right-of-way").

Defendants' written application substantially complied with § 2234.1-2(a). Most importantly, the Notice was given within one year of the expiration of the grant, the Notice was typewritten, it stated that it was made pursuant to federal statute that permitted a right to renew, stated that the right would be subject to existing law, and it stated the primary purpose for the continued use of the right of way. Plaintiff's arguments that Defendants failed to file an appropriate renewal application are unavailing. While initial applications required compliance with § 2234.1-2(a-e), renewal applications, per § 2234.4-1(c)(8), only require compliance with § 2234.1-2(a). Thus, Plaintiff's complaints about corporate status or failure to file a map do not apply to the renewal application. The Notice contained all the information needed for consideration of the issue.

Finally, the renewal regulation is unambiguous: if the application is filed within one year of expiration, and the grantee agrees to comply with all existing laws and regulations, the ROW may be extended by the grantee. Nowhere in the regulations is there an indication or ambiguity about the grantor's or fee owner's right to re-negotiate terms of the easement, particularly as to rents. There is no language justifying such a position. To so allow or require the grantee to do, would defeat the purpose of the Rural Electrification Act, to lower the cost of providing rural communities with power. It may be true that a suburban community has sprung up underneath the transmission lines where they cross Plaintiff's property in Henderson, however, the transmission lines still serve the purpose intended in the statute, whether they pass over people or

7

cacti. Forcing the transmission lines, which have a life far beyond fifty years, to be moved soley to accommodate one of many landholders would defeat the purpose of the statute. Accordingly, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment, renewing the ROW is granted.

III. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#17) is **DENIED**;

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#18) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

Dated this 29th of March, 2018.

_____
The Honorable Kent J. Dawson
United States District Judge

8